IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IMAX CORPORATION,**<br><br>    **Plaintiff**<br><br>    v.<br><br>**THE CAPITAL CENTER D/B/A CAPITAL CENTER FOR THE ARTS, SCIENCE AND EDUCATION, INC.,**<br><br>    **Defendant** | **Civ. No. 1:15-CV-0378**<br><br><br><br><br><br>**Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In this breach of contract action, Plaintiff has moved for judgment on the pleadings as to both its breach of contract claim and Defendant's counterclaim regarding nonpayment of a lease for commercial motion picture equipment. For the reasons below, the court will grant Plaintiff's motion.

## I.     Background[1]

### A.     Facts

Plaintiff IMAX Corporation ("Plaintiff" or "IMAX") is a Canadian corporation that specializes in motion picture technologies, offering proprietary software and theater architecture and equipment for entertainment purposes. (Doc. 1, ¶¶ 3, 5.) In June of 1996, Plaintiff entered into a lease with The Capital Center d/b/a Capital Center for the Arts, Science and Education, Inc. ("Defendant"), which is a Pennsylvania non-profit corporation

---

[1] As required on a motion for judgment on the pleadings, the following facts are taken from Plaintiff's complaint (Doc. 1), Defendant's answer and counterclaim (Doc. 9), Plaintiff's answer to Defendant's counterclaim (Doc. 11), and any exhibits attached to the pleadings, unless indicated otherwise.

that trades and does business as the Whitaker Center for Sciences and the Arts, for an IMAX three-dimensional motion picture projection system and the right for Defendant to use IMAX's trademark. (*Id*. at ¶ 6; Doc. 9, p. 1 of 12.) The parties subsequently entered into several renewals and amendments to the original lease agreement (collectively, the "Agreement") from 1998 to 2004. (Doc. 1 at ¶¶ 7-8.) At issue here is the final amendment that the parties executed in 2004 (the "2004 Amendment"), which extended the original lease term through September 8, 2019. (*Id*. at ¶ 9.)

Under the terms of the Agreement, Defendant leased the IMAX system in order to operate an IMAX three-dimensional theater at the Whitaker Center, and agreed to pay both an annual maintenance fee and an annual minimum rent to Plaintiff. (*Id*. at ¶¶ 10-12.) The Agreement defines the maintenance fee as an annual payment of $41,400 due in May of each year during the lease term, and the annual minimum rent as the greater of seven percent of the box office receipts or $75,000, due in monthly payments. (*Id*., Ex. A at p. 4 of 26; Ex. C at p. 2 of 12.) Upon default by Defendant, the Agreement provides that Plaintiff has the right to terminate the Agreement, accelerate "the Minimum Rent for the unexpired portion of the Term . . . as liquidated damages and not as penalty," and regain possession of the IMAX system. (*Id*. at ¶ 14; Ex. A at p. 11 of 26.) With regard to implied warranties during the lease term, the Agreement includes a disclaimer, which states:

> **Disclaimer of Warranties and Limitation of Remedies. The covenants, representations and warranties of I[MAX] contained in this Agreement are in lieu of all other covenants, representations and warranties, expressed, statutory or otherwise**

2

> **implied, as to the System, its condition, fitness for use, merchantability, durability or suitability for any particular use intended by [Defendant] and [Defendant] hereby confirms that I[MAX] has not given any such covenant, representation or warranties.**

(*Id*., Ex. A at p. 11 of 26.)  Finally, the Agreement also contains an integration clause, which states:

> This Agreement represents the entire transaction between the parties relating to its subject matter, and supersedes all prior agreements, negotiations and proposals, written and oral, relating to its subject matter.  No agreement purporting to amend or modify this Agreement shall be valid and binding upon the parties unless in writing and signed by both parties.

(*Id*. at p. 12 of 26.)

Prior to entering into the 2004 Amendment, Defendant expressed its desire to be able to play "Hollywood movies" on the IMAX system, and as part of the 2004 Amendment made a "significant financial investment" to update the IMAX system to an improved Quick Turn Reel Unit.  (Doc. 9, Countercl., ¶¶ 3-4.)  Plaintiff subsequently announced a new digital projection technology that Defendant avers rendered its IMAX system incapable of playing new Hollywood movies and therefore obsolete.  (*Id*. at ¶¶ 6-7, 9.)  Significantly, however, the 2004 Amendment contains a clause providing that should IMAX develop new digital projection technology during the lease term, Defendant had the right to lease such technology at a price "equal to that which IMAX has provided to similar sized clients leasing similar technology during the applicable calendar year."  (Doc. 1, Ex. C at p. 11 of 12.)

3

As alleged in the complaint, Defendant failed to pay its annual minimum rent as of July 31, 2014, and was in default on the maintenance fee as of September 21, 2014. (Doc. 1 at ¶¶ 17-18.) By letter dated September 4, 2014, Plaintiff notified Defendant that it was in default of its rent obligation, and, per the terms of the Agreement, if it did not cure the default within thirty days, Plaintiff had the right to terminate the Agreement and demand all amounts due, including the minimum rent for the remainder of the lease term. (*Id.* at ¶¶ 19-20.) On September 22, 2014, after Defendant made no attempt to cure the alleged default, Plaintiff took possession of the IMAX system. (Doc. 9, Countercl. at ¶18; Doc. 19, p. 2 of 13.) On October 30, 2014, Plaintiff terminated the Agreement via letter and demanded payment of all amounts due. (Doc. 9, Countercl. at ¶ 21.)

### B. Procedural History

Plaintiff initiated this action by filing a complaint on February 20, 2015. (Doc. 1.) Attached to the complaint are the Agreement, the relevant amendments to the Agreement, and the two letters notifying Defendant of its alleged default and terminating the Agreement. (*Id.*, Exs. A-E.) The complaint contains a single count for breach of contract, in which Plaintiff alleges that Defendant breached the Agreement by failing to make its scheduled payments on the maintenance fee and minimum rent for the IMAX system. (*Id.* at ¶¶ 26-33.) On April 24, 2015, Defendant responded with an answer, affirmative defenses, and a counterclaim. (Doc. 9.) In its response, Defendant did not dispute that it ceased making payments under the Agreement, but rather alleged that it had no obligation to

continue making payments because, *inter alia*, Plaintiff fraudulently induced Defendant to enter into the 2004 Amendment to the Agreement, violated the implied warranties of merchantability and fitness for a particular purpose, frustrated the purpose of the Agreement, retook possession of the IMAX system, and itself breached the Agreement. (*Id*. at pp. 7-9 of 12.) Plaintiff filed an answer to the counterclaim on May 18, 2015, asserting the affirmative defenses of waiver, estoppel, and statute of limitations. (Doc. 11.)

On May 21, 2015, Plaintiff filed a motion for judgment on the pleadings (Doc. 12), followed by a brief in support thereof on May 22, 2015 (Doc. 13). Defendant filed an opposition to the motion on June 15, 2015 (Doc. 19), and Plaintiff replied on June 23, 2015 (Doc. 21). The dispute was subsequently referred to mediation on July 7, 2015 (Doc. 24), which ended unsuccessfully on September 3, 2015 (Doc. 27). Thus, the matter has been fully briefed and is ripe for disposition.

**II.      Legal Standard**

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings after the pleadings have closed, but not within such time as to delay trial. *See* Fed. R. Civ. P. 12(c). In considering such a motion, the court must view the facts alleged in the pleadings as true and draw any inferences therefrom in the light most favorable to the non-movant. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In order to prevail on a motion for judgment on the pleadings, the movant must show "that there is no

material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).

When a motion for judgment on the pleadings seeks dismissal of a claim, the standard of review is nearly identical to that for a motion to dismiss under Rule 12(b)(6). *See Volunteer Firemen's Ins. Servs., Inc. v. Fuller*, Civ. No. 12-cv-2016, 2012 WL 6681802, *4 (M.D. Pa. Dec. 21, 2012) (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)) (citations omitted). The only notable difference is that on a motion for judgment on the pleadings, the court reviews not only the complaint but also the answer and any written instruments and exhibits attached to the pleadings. *Id.* (citing 2 Moore's Fed. Practice Civil § 12.38 (2004)); *see also Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337, 341-42 (D.N.J. 2000). Despite this difference, courts in this circuit have consistently stated that the distinction between the two standards is "merely semantic." *Christy v. We The People Forms & Serv. Ctrs., USA, Inc.*, 213 F.R.D. 235, 238 (D.N.J. 2003); *see Smith v. City of Phila.*, 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004) (citing *Regalbuto v. City of Phila.*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995) ("A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")). Just as a complaint will survive a motion to dismiss under Rule 12(b)(6) if the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim

is "plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), so will a claim survive a motion for judgment on the pleadings.

**III.     Discussion**

In its complaint, Plaintiff brings a single claim for breach of contract against Defendant due to Defendant's failure to continue paying both the maintenance fee and the minimum rent as defined in the Agreement, despite there being nearly five years left on the lease term. (*See* Doc. 1.) Although Defendant asserted several affirmative defenses in its answer and counterclaim (Doc. 9), it relies primarily on just four arguments in defense of Plaintiff's breach of contract claim: (1) the doctrine of mutual mistake is not barred from consideration by either the Agreement's integration clause or the parol evidence rule, and serves as a basis for rescinding the Agreement; (2) the doctrine of frustration of purpose is likewise not barred by the integration clause or the parol evidence rule and is an independent basis for rescission of the Agreement; (3) Plaintiff is in possession of the IMAX system and therefore cannot seek continued lease payments for property in its own possession; and (4) the disclaimer of implied warranties contained in the Agreement is insufficiently "conspicuous" and therefore unenforceable. (Doc. 19, p. 3 of 13.) The court will address these arguments in turn.

### A. Mutual Mistake[2]

Defendant first argues that it entered into the 2004 Amendment with the understanding that the IMAX system would continue to play "Hollywood 3D movies" throughout the term of the Agreement, and because the system is no longer capable of doing so, Defendant was mistaken when it executed the amendment. (Doc. 19, p. 5 of 13.) Pennsylvania adopts the Restatement (Second) of Contracts, which allows for a contract to be voided "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152 (1981). A mistake by only one party to a contract is considered a mutual mistake where the non-mistaken party knows of the mistaken party's erroneous belief and does not correct the misapprehension. *See Eagle Traffic Control, Inc. v. United Rentals, Inc.*, Civ. No. 02-cv-7439, 2004 WL 228686, \*4 (E.D. Pa. Feb. 4, 2004) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 180 (3d Cir. 1992)). However, "the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake.'" *Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc.*, 332 F. App'x 913, 922 (4th Cir. 2009) (quoting Restatement

---

[2] Because the court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332, it will apply the contract law of Pennsylvania as the forum state. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

(Second) of Contracts § 151 cmt. a.); *see also Charlton v. Gallo*, Civ. No. 09-cv-2447, 2010 WL 653155, *6 (E.D. Pa. Feb. 19, 2010) (citing same).

Here, Defendant alleges that, at the time of contracting for the 2004 Amendment, Plaintiff knew or should have known that the IMAX system would not be able to play "Hollywood 3D movies" throughout the full lease term. Plaintiff counters that it had no way to know what the prevailing film projection technology would be ten to fifteen years in the future, and that Defendant's "mistake" was therefore not as to a fact in existence at the time of contracting, but instead would require a prediction as to a future event. The court finds Plaintiff's argument, and specifically its reliance on *M. Leff Radio Parts Inc. v. Mattel, Inc.*, 706 F. Supp. 387 (W.D. Pa. 1988), persuasive.

In *Mattel*, the plaintiff acted as a distributor and resaler of video game cartridges pursuant to a contract with Mattel. *Id*. at 391. An unexpected and sudden decrease in the demand for video games in the early 1980s caused Mattel to stop producing the video game system that played the cartridges and to stop supporting the system and cartridges with advertising. *Id*. Unable to sell its remaining inventory of cartridges, Defendant attempted to return them to Mattel, but Mattel refused. *Id*. Plaintiff then filed suit against Mattel seeking to void its purchase obligations under the contract based upon, *inter alia*, a theory of mistake that is almost identical to that of Defendant in the instant case. *Id*. at 398. The plaintiff in *Mattel* argued that it was mistaken as to Mattel's intention to continue producing and supporting the video game system and cartridges, and, as in the instant case, that the other

9

party knew of its mistaken belief and took no steps to correct it. *Id.* Significantly, rumors of Mattel ceasing to produce the video game system had spread and Mattel sent correspondence to the plaintiff assuring it that the rumors were false a mere three months before deciding to stop production of, and support for, the system. *Id*. at 397. Nonetheless, the *Mattel* court found that any mistaken belief that Mattel would continue manufacturing the video game system was "clearly predicated on 'a party's prediction or judgment as to events to occur in the future[,]'" and did not relieve the plaintiff of its contractual obligations. *Id*. at 398 (quoting Restatement (Second) of Contracts § [151] cmt. a).

In the instant case, Defendant's defense of mutual mistake fails for the same reason. Defendant's defense is predicated on a "fact" it does not allege existed at the time the parties entered into the 2004 Amendment: a subsequent technology for showing "Hollywood 3D movies" that was incompatible with the IMAX system it leased. Not only did IMAX, as alleged by Defendant, release its technology after the parties entered into the 2004 Amendment, the court is not persuaded that the subsequent film technology rendered Defendant's leased IMAX system obsolete because Defendant continued to utilize the system and meet its financial obligations under the Agreement for nearly a decade after the execution of the 2004 Amendment. Furthermore, Defendant's argument that it was under the erroneous belief that the IMAX system would play "Hollywood 3D movies" throughout the entirety of the Agreement does not a create a mutual mistake where: 1) the Agreement makes no mention of "Hollywood 3D movies;" 2) as part of the 2004 Amendment that

extended the Agreement for a period of fifteen years, Defendant upgraded the system to the then-new Quick Turn Reel Unit technology only eight years after entering into the original Agreement; and 3) the 2004 Amendment itself specifically contemplates a future upgrade to digital projection technology. Indeed, the clause regarding the new digital technology appears under its own separate heading, immediately preceding the clause regarding the Quick Turn Reel Unit upgrade, and states:

> **Digital Technology**
>
> If, during the [lease term], IMAX develops new digital projection technology ("DP Technology") for use in the [t]heatre and [Defendant] is desirous of leasing DP Technology, IMAX shall provide pricing equal to that which IMAX has provided to similar sized clients leasing similar technology during the applicable calendar year.

(Doc. 1, Ex. C at p. 11 of 12.) The combination of upgrading as part of the 2004 Amendment and the inclusion of language regarding the next anticipated upgrade belie Defendant's argument that it reasonably expected the system to be able to play "Hollywood 3D movies" for the full fifteen-year lease term. Accordingly, the court finds that there was no mutual mistake that would make the Agreement voidable.

### B. Frustration of Purpose

Defendant next argues that the Agreement is voidable because the purpose for which Defendant entered into it – to play "Hollywood 3D movies" – has been frustrated.[3]

---

[3] Defendant appears to conflate this argument with its argument for mutual mistake, and, indeed, cites case law discussing the doctrine of mistake. (*See* Doc. 19, pp. 8-9 of 13 (citing *Hart v. Arnold*, 884 A.2d 316, 334-35 (Pa. Super. Ct. 2005) (stating that contract could be rescinded for mutual mistake of fact).) To

The doctrine of frustration of purpose is to be applied sparingly. *Dorn v. Stanhope Steel, Inc.*, 534 A.2d 798, 812 (Pa. Super. Ct. 1987). A party may avoid its performance on a contract under the defense of frustration of purpose only where "after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1190 (Pa. Super. Ct. 2007) (quoting Restatement (Second) of Contracts § 261).

Here, no such unexpected intervening event occurred after execution of the 2004 Amendment. Rather, Defendant contends that the IMAX system's inability to play new films that require digital projection technology caused the frustration of purpose. As discussed above, based on the clause in the Agreement that specifically contemplated an upgrade to digital technology, and Defendant's upgrading the technology of the IMAX system in 2004, it is not reasonable that the parties both entered into the 2004 Amendment on the basic assumption that the system would need no upgrades over the course of a fifteen-year lease term. Accordingly, frustration of purpose does not provide a basis upon which to void the Agreement.

### C. Lease Payments for Repossessed Property

Defendant next argues that Plaintiff is precluded from seeking accelerated rent payments pursuant to the Agreement because Plaintiff took repossession of the IMAX

---

the extent Defendant's argument is based on mistake, that argument was addressed and rejected by the court *supra*, section III.A.

system. Plaintiff counters that it is not precluded from seeking acceleration of the rent due, despite being in possession of the leased equipment, because Defendant voluntarily returned the IMAX system and Plaintiff did not accept the return as surrender.

Generally, a lessor of equipment has a choice, upon the lessee's breach of the lease, to seek either repossession of the property and actual damages, or acceleration of the rent due for the remainder of the lease term. *Kingsly Compression, Inc. v. Mt. V Oil & Gas, Inc.*, Civ. No. 09-cv-0316, 2010 WL 4929076, *5 (W.D. Pa. Nov. 30, 2010) (citing *1600 Penn Corp. v. Comput. Scis. Corp.*, Civ. No. 06-cv-5329, 2008 WL 4443016, *14 (E.D. Pa. Sept. 30, 2008)); *see also Finkle v. Gulf & W. Mfg. Co.*, 744 F.2d 1015, 1021 (3d Cir. 1984). However, possession of the leased property itself does not preclude a lessor from seeking to accelerate the remaining rent where the lessee relinquishes possession voluntarily. Rather, a lessee still must establish by clear and convincing evidence that the lessor accepted the surrender of the leased property. *Kingsly*, 2010 WL 4929076, at *5 (citing *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 668 (E.D. Pa. 2003)). To establish acceptance of surrender, the lessee cannot merely show that the lessor regained possession of the property, but must prove that the lessor's actions were adverse to the repossession of the property by the lessee. *Onal*, 275 F. Supp. 2d at 669 (citing *Stonehedge Square Ltd. P'ship v. Movie Merchs., Inc.*, 685 A.2d 1019, 1023 (Pa. Super. Ct. 1996)). In other words, "[i]f the lessor does not accept surrender of the goods and the lease contains an acceleration clause, the lessor is entitled to receive as a lump sum all rents that will fall due during the unexpired

13

term of the lease." *Kingsly*, 2010 WL 4929076, at *5 (citing *1600 Penn Corp.*, 2008 WL 4443016, at *14).

Defendant relies almost exclusively on the *Kingsly* decision to support its argument that Plaintiff may not seek acceleration of rent under the lease while in possession of the leased property. (*See* Doc. 19, pp. 10-11 of 13.) However, the *Kingsly* court clearly stated that "[a] lessee simply leaving the property in the lessor's custody is not clear and convincing proof of acceptance of surrender." *Kingsly*, 2010 WL 4929076, at *5. In *Kingsly*, the parties entered into a lease for a natural gas compressor. After the lessor reconditioned the compressor and made it available for delivery, the lessee refused to take possession. *Id*. The lessee made partial payments under the lease, but later decided it did not want the compressor, attempted to terminate the lease, and demanded return of its partial payments. *Id*. at *2. The lessor subsequently attempted, unsuccessfully, to sell or relet the compressor. *Id*. Despite the lessee never taking possession and the lessor attempting to relet the equipment, the court nonetheless found that the facts did not constitute acceptance of surrender because the lessor's actions had not interfered with the lessee's possessory rights. *Id*. at *5.

Here, Defendant requested that Plaintiff take possession of the IMAX system, and Plaintiff acquiesced. However, Defendant's request came well after Plaintiff's notice of default and demand for acceleration of the rents still due under the Agreement, and at no point did Plaintiff demand repossession of the IMAX system. While Pennsylvania's general

rule, in order to prevent a lessor from obtaining a double recovery, is that a lessor must ordinarily choose between 1) repossession and actual damages or 2) acceleration of all rents due, *see id.* at *7 (citing *Onal*, 275 F. Supp. 2d at 668 (citing *Finkle*, 744 F.2d at 1021)); *1600 Penn Corp.*, 2008 WL 4443016, at *14; *Homart Dev. Co. v. Sgrenci*, 662 A.2d 1092, 1100 (Pa. Super. Ct. 1995), "where the lessor is not asking the court to award both possession and . . . accelerated rent, the risk of double recovery is not present and not relevant." *Kingsly*, 2010 WL 4929076, at *7 (citing *Hirsh v. Carbon Lehigh Intermediate Unit # 21*, 65 Pa. D. & C. 4th 390, 418 (Pa. Com. Pl. 2003)). Because Plaintiff has not asked this court to award both possession and accelerated rent, the court finds that Plaintiff is in the same position as the plaintiff in *Kingsly*, and therefore is not precluded from seeking to accelerate the rent, despite being in possession of the leased property.

      The same is not true regarding the annual maintenance fee. First, the acceleration clause does not mention the annual maintenance fee, only stating that "the Minimum Rent for the unexpired portion of the Term shall be accelerated . . . and shall become due and be paid upon the demand of [IMAX]." (Doc. 1, Ex. A at p. 11 of 26.) Thus, Plaintiff has no contractual claim to acceleration of the annual maintenance fee. Second, Plaintiff would be unjustly enriched if it were allowed to accelerate the annual maintenance fee where it is in possession of the IMAX system and cannot possibly have any future maintenance obligations to Defendant. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (holding that a party is unjustly enriched where, under the circumstances, it would be

inequitable for the party to retain a benefit for which it has not provided value). Plaintiff would essentially be paid for nothing, which would result in it obtaining "a benefit that would be unconscionable for it to retain." *Martin v. Little, Brown & Co.*, 450 A.2d 984, 988 (Pa. Super. Ct. 1981). Accordingly, Plaintiff may not pursue acceleration of the annual maintenance fee.

### D. Implied Warranties

Defendant's final defense to Plaintiff's breach of contract claim, which also serves as the basis for Defendant's counterclaim for breach of contract, is that the disclaimer of implied warranties contained in the Agreement is unenforceable. In this regard, Defendant claims that Plaintiff failed to adhere to the implied warranty of fitness for a particular purpose, as Plaintiff knew or should have known that Defendant's particular purpose for entering into the Agreement was to play "Hollywood movies" through the entire lease term. (*See* Doc. 9, Countercl. at ¶¶ 7-11.) Plaintiff contends that the disclaimer is enforceable and properly disclaims the implied warranty of fitness for a particular purpose, and, therefore, both Defendant's affirmative defense and counterclaim based on that implied warranty fail. (Doc. 21, pp. 9-10 of 11.)

The Pennsylvania Uniform Commercial Code allows for implied warranties, including the implied warranty of fitness for a particular purpose, to be disclaimed as long as the disclaimer is "conspicuous." 13 Pa. C.S.A. § 2316(b). A clause or term is deemed to be "conspicuous" when it is "so written, displayed or presented that a reasonable person against

which it is to operate ought to have noticed it." 13 Pa. C.S.A. § 1201(b)(10). As this court has held, in assessing whether a disclaimer is "conspicuous," "the court may consider the disclaimer's placement within the warranty document, the size of the typeface in which the disclaimer appears, and the use of typographic styles, colors, and highlighting to call attention to the disclaimer." *Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 702 (M.D. Pa. 2008).

> Here, the disclaimer found in the Agreement appears as follows:
>
> **<u>Disclaimer of Warranties and Limitation of Remedies.</u>  The covenants, representations and warranties of I[MAX] contained in this Agreement are in lieu of all other covenants, representations and warranties, expressed, statutory or otherwise implied, as to the System, its condition, fitness for use, merchantability, durability or suitability for any particular use intended by [Defendant] and [Defendant] hereby confirms that I[MAX] has not given any such covenant, representation or warranties.**

(Doc. 1, Ex. A at p. 11 of 26.) While the disclaimer is in the same size font as the surrounding text and is not highlighted, it does appear in boldface type and the heading is underlined. The disclaimer is found in Schedule B of the Agreement, which covers the general terms and conditions of the lease. Schedule B is seven pages in length and, significantly, the disclaimer is the only clause that appears in boldface type. Courts in this circuit have routinely held that disclaimers in boldface type, unlike the surrounding provisions of the agreements in which they are located, are sufficiently "conspicuous" to disclaim implied warranties. *See, e.g., Mack Trucks, Inc. v. BorgWarner Turbo Sys., Inc.*,

Civ. No. 08-cv-2621, 2011 WL 1045108, *7 (E.D. Pa. Mar. 22, 2011) (finding a disclaimer of implied warranties in boldface type in a contract between sophisticated parties to be "conspicuous"); *D & D Transp. v. Freightliner, L.L.C.*, Civ. No. 07-cv-0960, 2008 WL 919599, *5 (M.D. Pa. Apr. 2, 2008) ("[T]he disclaimer is the same size as [the] surrounding text, but it is in bold format. Much of the text on the same page is not in bold. The disclaimer is in its own separate paragraph. The court concludes that a reasonable person ought to have noticed this disclaimer."); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 889 (E.D. Pa. 1996) (finding a disclaimer "conspicuous" where the disclaimer was in boldface type and the surrounding text was not).

Accordingly, the court finds that the disclaimer of the implied warranty of fitness for a particular purpose found in the Agreement is sufficiently "conspicuous" and therefore enforceable. Because the court finds that the implied warranty of fitness for a particular purpose was properly disclaimed in the Agreement, Plaintiff must be awarded judgment as to Defendant's counterclaim.

### E. Leave to Amend its Pleadings

Finally, Defendant argues that, should the court be inclined to award judgment on the pleadings to Plaintiff as to both its breach of contract claim and Defendant's counterclaim, the court should instead grant Defendant leave to amend its pleadings in order to more specifically aver its defenses and claims based on mutual mistake and frustration of purpose. (Doc. 19, pp. 9-10 of 13.) Generally, leave to amend a pleading pursuant to

Federal Rule of Civil Procedure 15(a) should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court need not grant leave to amend in the presence of bad faith, undue delay, undue prejudice, or futility. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Defendant has requested to amend its pleading with regard to its theories of mutual mistake and frustration of purpose, which the court has already rejected herein. Because the clear language of the Agreement defeats Defendant's arguments for mutual mistake or frustration of purpose, any amendment as to those issues would be futile. Accordingly, Defendant's request for leave to amend its pleading will be denied.

**IV.     Conclusion**

Plaintiff has properly pleaded a breach of contract claim against Defendant, and Defendant has not disputed the underlying facts, namely, nonpayment of fees due under a lease agreement. For the reasons stated herein, Defendant's affirmative defenses and counterclaim fail as a matter of law. In addition, Defendant's request for leave to amend its pleadings is futile and will be denied. Accordingly, Plaintiff will be awarded judgment on the pleadings as to its breach of contract claim as well as Defendant's counterclaim.

An appropriate order will issue.

  s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: January 11, 2016